**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1678
_____

MICHAEL R. WILSON, JR.,
                                        Appellant
v.

AEROTEK, INC.; JOHN RUDY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:14-cv-00578)
District Judge:  Honorable Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1
on January 22, 2021

Before:  HARDIMAN and ROTH, *Circuit Judges*, and PRATTER,[*] *District Judge*

(Filed: May 7, 2021)
_____

OPINION[†]
_____

_____

[*]       Honorable Gene E.K. Pratter, District Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

[†]       This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

PRATTER, *District Judge*.

After he was fired, Michael Wilson sued his former employer, Aerotek, Inc., and his supervisor, John Rudy. Wilson alleged violations of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601 *et seq.*, and that he had been defamed. Aerotek counterclaimed under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, alleging Wilson violated the non-compete provision of Aerotek's Incentive Investment Plan (IIP), seeking equitable disgorgement of the payments made to him pursuant to the IIP. Aerotek later moved for judgment on the pleadings. Wilson also moved for judgment on the pleadings, arguing that provisions in his earlier 2012 Employment Agreement trumped the terms of his later-signed 2011 IIP Award Agreement.

The District Court granted summary judgment to Aerotek and Rudy on Wilson's FMLA and defamation claims. It partially granted Aerotek's motion for judgment on the pleadings on its counterclaims, finding that the terms of the 2011 IIP Award Agreement were valid and compatible with the Employment Agreement. As to Aerotek's equitable disgorgement counterclaim, the District Court denied Wilson's two motions for partial summary judgment, finding that factual issues remained. The parties later filed a joint motion for the entry of judgment, which the District Court granted. It also entered summary judgment, *sua sponte*, in Aerotek's favor on its equitable disgorgement counterclaim.

We will affirm the District Court's judgment and the orders underlying that judgment.

2

## I.     BACKGROUND

Wilson joined Aerotek in 1999 and, throughout his employment, was promoted several times.  His last promotion was in 2010 to become Director of Business Operations (DBO) and lead sales teams in several offices.  Two years later, Wilson took time off from work to help his ailing stepfather and his mother.  Wilson was never denied time off and did not have to use vacation time.  Wilson's stepfather died in early March 2013.

Later that month, Rudy met with Wilson to discuss Wilson's 2012 performance issues and to identify goals for 2013.  Around this time, Aerotek began receiving in-house complaints about Wilson.  Rudy and the H.R. office were notified, and Aerotek opened an internal investigation,[1] that included interviews of several of Wilson's subordinates and other colleagues.  The investigation corroborated the substance of the complaints and Aerotek, via Rudy, terminated Wilson's employment in April 2013.

Previously, in 2010 (the same year he was promoted to DBO), Wilson was invited to participate in Aerotek's Incentive Investment Plan, an ERISA-governed plan.  The terms of the IIP contained a 30-month non-compete provision that prohibited any plan participant from competing within 250 miles of their last Aerotek office location.  Wilson received a 2010 IIP Award Agreement, dated January 1, 2011, which reflected the number of Units he would be receiving and stated that the award was subject to the terms and conditions of the IIP.  The following year, Wilson received a 2011 IIP Award Agreement and also an

---

[1]     Aerotek also conducted a separate investigation at the end of March in response to an employee complaint about alleged inappropriate sexual comments made by Wilson. Rudy testified that this investigation was not a factor in his contribution to the decision to terminate Wilson's employment.

Employment Agreement, both dated January 1, 2012. Wilson signed the Employment Agreement, which contained an 18-month non-compete provision with a 100-mile geographic range, in March 2012. Wilson signed the 2011 IIP Award Agreement in July 2012, which, like his earlier award agreement, awarded Units subject to the terms and conditions of the IIP.

One month after he was fired in 2013, Wilson received a letter from Aerotek that reiterated the terms of the IIP. It also noted that Wilson would be obliged to refund to Aerotek any payments in the event that he breached the terms of the IIP. Wilson signed the acknowledgment section and returned the letter. Before the 30-month period expired, Aerotek learned that Wilson was competing against it within the proscribed geographic area. Aerotek stopped making IIP payments to him. By that time, Wilson had received over $41,000 in such payments.

Wilson sued Aerotek in early 2014. Counterclaims and substantial motion practice followed. Several reports and recommendations ("R&Rs") were issued by the assigned magistrate judge, most of which were fully adopted by the District Court, and several of which Wilson now challenges.

Wilson first argues that the District Court erred in its August 31, 2018 Order granting summary judgment to Aerotek and Rudy on his FMLA retaliation claims. Wilson asserts that, contrary to the District Court's conclusion, he put forth a prima facie case of retaliation and showed that Aerotek's reasons for firing him were pretextual.

Next, Wilson contends that the District Court erred in its March 9, 2016 Order, which granted Aerotek's motion for judgment on the pleadings on its counterclaims and

4

denied Wilson's motion for judgment on the pleadings. Wilson asserts that his Employment Agreement's 18-month non-compete provision takes precedence over the IIP's 30-month non-compete provision. Wilson argues that he complied with the terms of his Employment Agreement by not competing against Aerotek for at least 18 months after he was fired and, thus, he claims that Aerotek violated ERISA and the terms of the IIP by discontinuing its payments to him.

Finally, Wilson argues that the District Court erred in its March 15, 2019 Order, which denied his second motion for partial summary judgment on Aerotek's equitable disgorgement counterclaim. Wilson asserts that he did not knowingly violate the terms of the IIP and, thus, he should not have been subject to ERISA equitable disgorgement. Wilson's appellate brief does not directly address the District Court's February 25, 2020 Order, which granted summary judgment *sua sponte* to Aerotek on the equitable disgorgement counterclaim after the parties' joint motion for entry of judgment with their representation that no triable issues then remained in the case. Instead, Wilson reiterates that the District Court erred in denying his second motion and concludes his opening appellate brief by asking us to enter an order granting his second motion for partial summary judgment.[2]

---

[2] Wilson listed five of the District Court's orders in his Notice of Appeal, including its March 8, 2018 Order that denied his first motion for partial summary judgment and its February 25, 2020 Order that granted summary judgment in favor of Aerotek on its equitable disgorgement counterclaim. However, as will be discussed below, Wilson fails to directly address either of these in his appellate briefing.

## II.    STANDARD OF REVIEW

We review the grant of summary judgment *de novo*. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012). The standard of review for a motion for judgment on the pleadings is plenary. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219-20 (3d Cir. 2005). As to both, the task is to be assured that no material issues of fact stood in the way of granting the motions after drawing all reasonable inferences in favor of the non-movant.

## III.    DISCUSSION

### A.    FMLA Retaliation

#### 1.    Prima Facie Case

Wilson argues that the District Court erred in granting summary judgment to Aerotek and Rudy when it concluded that he failed to establish a prima facie case of FMLA retaliation. To set forth a prima facie case, a plaintiff must prove that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *Lichtenstein*, 691 F.3d at 301-02. Neither party disputes that Wilson suffered an adverse employment decision. But Aerotek contends that Wilson never provided notice that he was seeking FMLA leave, thus severing any causal relationship between his alleged FMLA-qualifying leave and the adverse employment decision.

Wilson argues that he called Rudy prior to each of his absences and informed him why he would be away from work. Rudy testified that it was normal practice for Wilson to call him if he would not be coming to work and that there was no reason to doubt Wilson

6

had notified him when he had to help his stepfather. In *Lichtenstein*, we held that a genuine factual dispute existed as to whether it was adequate notice that an employee was taking FMLA leave when she called her supervisor to inform her that she was with her mother who had been rushed to the hospital. 691 F.3d at 306-07. Drawing every reasonable inference in Wilson's favor here, we conclude that his calls to Rudy and prior discussions were enough to create a genuine issue of material fact as to whether Rudy was on notice that Wilson was taking FMLA time off to assist his stepfather.

Causation is a closer call. Wilson took time off before and after his stepfather's death in March 2013. He was fired in April 2013. "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). However, during this same time period, Aerotek had received several complaints about Wilson regarding his lack of professionalism. These complaints, from Wilson's co-workers, prompted an investigation.

Ultimately, the District Court adopted the Magistrate Judge's R&R and found that Wilson had failed to identify evidence "to connect his use of leave time from work [first in 2012] with his termination from employment more than a year later, which followed an investigation into multiple complaints." JA24. The leave taking appears to have started in 2012 when Wilson's stepfather was first diagnosed with lung cancer and had surgery, but Wilson's taking leave continued repeatedly over the next year until his stepfather's death. From our consideration of these dates, we conclude that temporal proximity here, or lack

7

thereof, is not a significant factor for either side in this case. Thus, we agree with the District Court that Wilson failed to establish causation.

### 2. Pretext

The District Court did find, however, that Aerotek's legitimate, non-retaliatory reason for firing him was not pretextual. Wilson argues this was error. We disagree. To establish pretext, an employee must show not only that the "employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

The District Court adopted the R&R and found that Wilson did not meet his burden of establishing that Aerotek's stated reason for firing him—his co-workers' complaints—was pretextual. Wilson argues that Aerotek provided shifting explanations for its termination decision, pointing to Rudy's admission that he did not consider any alleged sexual remarks by Wilson when he decided to fire him. However, as Aerotek counters, complaints about Wilson's management style and accountability were separate from those made by a female employee about his alleged inappropriate comments, and two separate investigations were conducted. Rudy testified that the decision to fire Wilson was based solely on the investigation into Wilson's poor management style and lack of accountability, and because "[Rudy] felt [Wilson] had lost his people and performance was not great." JA700.

Wilson contends that the investigation into his professionalism and performance was itself flawed. We are not convinced. Even if the investigation was not perfect, or inconclusive, or led to a combination of positive and negative reviews of Wilson, that is

not sufficient to meet Wilson's burden. Wilson must do more than "simply show that the employer's decision was wrong or mistaken," he must show that "discriminatory animus motivated the employer." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Wilson has not identified any evidence that an "invidious discriminatory reason was more likely than not a motivating or determinative cause" of Aerotek's decision to terminate his employment. *Id.* at 764. The record does not show that Rudy harbored any discriminatory animus toward Wilson for the absences or otherwise; instead, it shows that Rudy was "[v]ery supportive" of Wilson's situation. JA781. Furthermore, nothing in the record shows that Aerotek's investigation into complaints about Wilson, and the eventual decision to fire him, were motivated by a discriminatory animus. We will affirm the District Court's grant of summary judgment in favor of Aerotek and Rudy on Wilson's FMLA retaliation claim.

**B.      The Incentive Investment Plan and the Employment Agreement**

Wilson also argues that the District Court erred in granting Aerotek's motion for judgment on the pleadings on its counterclaim that Wilson breached the terms of the IIP. Wilson asserts that the 18-month non-compete provision in his Employment Agreement takes precedence over the IIP's 30-month non-compete provision. We will affirm the District Court's conclusion that the 2012 Employment Agreement did not eclipse the 2011 IIP Award Agreement or the IIP terms because there was no overlap of subject matter and

9

each document stood in harmony with the other, thereby requiring Wilson's compliance with the terms of each contract.

Wilson argues for the preemptory power of his 2012 Employment Agreement because it mentioned "incentive pay" and contained an integration clause that "This Agreement represents the entire agreement between the parties with respect to the subject matter covered by this Agreement." JA242. However, the Employment Agreement contained no details regarding incentive pay, only stating that Wilson was eligible for it. By contrast, the IIP and 2011 IIP Award Agreement specifically defined how Units would be awarded and the terms and conditions underlying employee incentive pay.

The two contracts at issue here concern distinct subject matters and can be enforced in conjunction with each other. In considering separate writings, "even where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together." *Kropa v. Cabot Oil & Gas Corp.*, 609 F. Supp. 2d 372, 376-77 (M.D. Pa. 2009) (quoting *Shehadi v. Ne. Nat'l Bank of Pa.*, 378 A.2d 304, 306 (Pa. 1977)); *see also Heasley v. Beldon & Blake Corp.*, 2 F.3d 1249, 1258 (3d Cir. 1993) (looking to state common law contract rules when fashioning federal common law rules in an ERISA case). Wilson signed his 2011 IIP Award Agreement more than three months *after* he signed his Employment Agreement.[3] Additionally, the letter Wilson received from Aerotek one month after he was fired underscored that the IIP terms still applied and that he would receive his final IIP principal payment on or about October 7, 2015—the end of

---

[3] Wilson's 2011 IIP Award Agreement, dated January 1, 2012, was not signed by him until July 2012. He signed his Employment Agreement in March 2012.

10

the 30-month period following the termination of his employment. Wilson signed that acknowledgment section and returned the letter. We are unpersuaded by Wilson's argument that his Employment Agreement somehow curtailed or foreshortened the terms and conditions in the IIP.

## C. Equitable Disgorgement

### 1. Wilson's Second Motion for Partial Summary Judgment

Wilson next contends that the District Court erred in denying his second motion for partial summary judgment on Aerotek's equitable disgorgement counterclaim.[4] He argued that equitable disgorgement was unavailable as a matter of law against a non-fiduciary ERISA plan participant. In his objections to the R&R, Wilson acknowledged that disgorgement was theoretically an available equitable remedy under ERISA, but argued disgorgement was improper because he did not "knowingly" violate the IIP. Significantly, however, while his second motion was pending, Wilson joined Aerotek in informing the District Court of their intent to stipulate to an entry of judgment on Aerotek's equitable disgorgement counterclaim.

The District Court then adopted the R&R and denied Wilson's second motion, noting that ERISA's language provides for equitable relief and that other courts have recognized that equitable relief is appropriate in certain circumstances, including against non-fiduciary plan participants. The District Court concluded that it would be improper at

---

[4] Wilson does not address the District Court's denial of his first motion for partial summary judgment in his appellate briefing. Thus, he has forfeited any argument on this issue. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 148 (3d Cir. 2017).

11

the summary judgment stage to make a factual determination as to Wilson's state of mind and whether he knowingly violated the terms of the IIP. We agree. "[A] court does not resolve factual disputes or make credibility determinations" at the summary judgment stage. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1362 n.1 (3d Cir. 1996). Thus, we will affirm the District Court's denial of Wilson's second motion.

### 2. Entry of Judgment and *Sua Sponte* Grant of Summary Judgment

After Wilson's second motion was denied, the parties followed through on their previously expressed intent and filed a joint motion for entry of judgment, asking the District Court to enter judgment in favor of Aerotek, including on the equitable disgorgement counterclaim. They noted the entry of judgment "shall not prejudice [Wilson]'s ability to appeal as of right the underlying merits and the prior decisions made by the District Court relating to Aerotek's counterclaims." JA13. Of special note here, they further represented that "there [we]re no disputed issues left for trial in this case." JA13.

The District Court granted the parties' joint motion and entered judgment in favor of Aerotek. It also granted summary judgment, *sua sponte*, to Aerotek on its equitable disgorgement counterclaim. The District Court stated that there were "no remaining claims for [it] to resolve" and the only question left was the "appropriate monetary relief to which Defendant Aerotek is entitled [] to," JA13, noting that summary judgment *sua sponte* was appropriate because the parties' formal stipulation "obviate[d] any concern as to a lack of a developed record on the counterclaim." JA14.

12

Wilson's appellate briefing does not directly address the District Court's entry of judgment or its *sua sponte* grant of summary judgment. Instead, seeming to again focus on the denial of his second motion for partial summary judgment, Wilson argues that the District Court erred in concluding that equitable disgorgement was available because (1) he was not a plan fiduciary, (2) he did not "knowingly violate ERISA," and (3) the IIP did not authorize disgorgement. However, Wilson has waived any argument regarding his state of mind and whether he knowingly violated the terms of the IIP. The parties' joint motion was clear: Wilson stipulated that there were "no triable disputes of fact on the remaining claims in this case." JA13. By implication, Wilson acknowledged that there were no disputed factual issues left regarding his state of mind. "[A]rguments not squarely put before the district court are waived on appeal." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 139 n.8 (3d Cir. 2017).

Returning to his state of mind, Wilson also appears to argue that, as a matter of law, if a plan does not list a certain remedy available under ERISA, then a breach of that plan cannot be a knowing breach of ERISA. He asserts that "the IIP contained no provision which would have alerted [him] to any remedy of disgorgement. Thus, any breach by [him] of the IIP cannot be a knowing violation of ERISA." Wilson Op. Br. 44. But this argument is entirely beside the point. The issue is whether Wilson knowingly breached an ERISA-governed plan, not whether he knew of the possible penalties of such a breach.

ERISA allows a civil action to be brought "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). Section "502(a)(3) makes no mention at

13

all of which parties may be proper defendants—the focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I].'"[5] We have previously held that a "claim for disgorgement, which is akin to an accounting for profits, is an equitable remedy available under ERISA and *Great-West Life.*" *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 420 (3d Cir. 2013); *see Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). Furthermore, we held in *National Security Systems, Inc. v. Iola* that "a nonfiduciary who knowingly participated in a transaction prohibited by [ERISA was] amenable to suit under § 502(a)(3)." 700 F.3d 65, 91 (3d Cir. 2012).

Thus, Wilson's argument that he was unaware that Aerotek might be entitled to equitable relief in the event that he breached the terms of the IIP is of no consequence. There is no such requirement that any relief available under ERISA must be explicitly stated in the terms of a plan.

Finally, as already observed, nowhere in his appellate briefing does Wilson address the District Court's *sua sponte* grant of summary judgment in favor of Aerotek. An appellant who fails to raise an issue in his opening brief has either waived or forfeited the issue, *Barna*, 877 F.3d at 148 (citing Fed. R. App. P. 28(a) and I.O.P. 28.1), and, "for those purposes[,] 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,

---

[5]     *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (alteration and emphasis in original) (quoting 29 U.S.C. § 1132(a)(3)). "Under *Harris Trust*, liability only attaches to a non-fiduciary if they knowingly participated in a prohibited transaction." *Spear v. Fenkell*, No. 13-cv-2391, 2016 WL 5661720, at *30 (E.D. Pa. Sept. 30, 2016), *clarified on denial of reconsideration*, No. 13-cv2391, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016).

26 F.3d 375, 398 (3d Cir. 1994) (second alteration in original) (quoting *Simmons v. City of Phila.*, 947 F.2d 1042, 1066 (3d Cir. 1991)). Here, because Wilson's failure to raise the issue appears inadvertent, he has forfeited any argument regarding the District Court's *sua sponte* grant of summary judgment by failing to include it in his appellate briefing. We will not further address it here.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Aerotek and Rudy on Wilson's FMLA retaliation claim, its grant of Aerotek's motion for judgment on the pleadings and its denial of Wilson's cross-motion for judgment on the pleadings, its denial of Wilson's second motion for partial summary judgment, and its grant of summary judgment in favor of Aerotek on its equitable disgorgement counterclaim. We will also affirm the District Court's corresponding entry of judgment in favor of Aerotek on its equitable disgorgement counterclaim and Wilson's FMLA retaliation claim.